Arthur L. HAIRSTON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–136C.

United States Court of Federal Claims.

June 29, 2011.

---

Arthur L. Hairston, Sr., appearing pro se, White Deer, Pennsylvania, Plaintiff.

David A. Levitt, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

*OPINION AND ORDER*

WHEELER, Judge.

Plaintiff Arthur L. Hairston, Sr. filed a pro se Complaint on March 4, 2011, and an Amended Complaint on April 4, 2011, naming as defendants the United States, the Director of the Federal Bureau of Prisons (FBOP), and various officials from the federal correctional institutions where Mr. Hairston has been incarcerated. (Compl. ¶ 1, Mar. 4, 2011; Am. Compl. ¶¶ 1–23, Apr. 4, 2011.) Mr. Hairston has asserted claims under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (FTCA), and claims based upon the United States Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Supreme Court authorized causes of action against federal government officials in their personal capacities for constitutional rights violations. *See Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Thus, bringing a *"Bivens* action" allows victims of civil rights violations to seek compensation for the wrongs done to them without restriction by the doctrine of sovereign immunity. *Id.*

Mr. Hairston alleges that the named Defendants violated the Eighth Amendment by denying him proper treatment for a chronic back condition, and that they also violated his constitutional rights by transferring him to a different prison each time he had exhausted his administrative remedies in order to prevent his access to the courts.[1] (Compl. ¶¶ 1–7, Mar. 4, 2011.) As relief, he seeks transfer to a "medical facility or camp" as well as $12,000,000 in damages to compensate him for ten years of severe back pain. *Id.* ¶¶ 6–7. On April 12, 2011, the Court granted Mr. Hairston leave to proceed in forma pauperis.

The United States moved to dismiss Mr. Hairston's Complaint and First Amended Complaint for lack of subject matter jurisdiction. (Def.'s Mot. to Dismiss at 1, Apr. 20, 2011.) In response, Mr. Hairston argues that the Court should find jurisdiction under

28 U.S.C. § 1346, or it should transfer his Amended Complaint to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1631. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 1–2, May 2, 2011.) After due consideration, the Court grants Defendant's motion to dismiss for lack of subject matter jurisdiction and denies Mr. Hairston's request for transfer.

*Discussion*

A. *This Court Lacks Jurisdiction to Adjudicate Mr. Hairston's Claims.*

■ Although Mr. Hairston is a pro se plaintiff, he still "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988); *Flowers v. United States,* 80 Fed.Cl. 201, 211–12 (2008). Mr. Hairston has not met this burden.

■ The Tucker Act, 28 U.S.C. § 1491, limits the jurisdiction of the United States Court of Federal Claims to "claim[s] against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." § 1491(a)(1). First, this provision means that "the *only* proper defendant for any matter before this court is the United States, not its officers, nor any other individual." *Stephenson v. United States,* 58 Fed. Cl. 186, 190 (2003) (emphasis in original) (citing *United States v. Sherwood,* 312 U.S. 584, 589, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Therefore, this Court must dismiss Mr. Hairston's claims against the FBOP Director and other prison staff.

■ Second, the Tucker Act specifically states that the Court of Federal Claims lacks jurisdiction over claims sounding in tort. § 1491(a)(1). This Court thus lacks jurisdiction over Mr. Hairston's FTCA and *Bivens* actions, both of which seek redress for constitutional torts. *See Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir.1997) (*"Bi-*

---

1. Although Mr. Hairston does not frame this allegation in terms of any specific constitutional violation, Defendant construes it "to seek judicial redress against FBOP officials for alleged violations of the Fifth Amendment...." (Def.'s Mot. to Dismiss at 10, Apr. 20, 2011.)

*vens* actions ... lie outside the jurisdiction of the Court of Federal Claims."); *see also Pendleton v. United States*, 47 Fed.Cl. 480, 485–86 (2000) (stating that the Court of Federal Claims lacks jurisdiction to entertain a tort claim under the FTCA).

■ Furthermore, the Tucker Act grants this Court jurisdiction only over claims derived from money-mandating sources of law. *See* § 1491(a)(1); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir. 2005). A source of law, such as a constitutional provision, statute, or regulation, "is money-mandating for jurisdictional purposes if it can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties it imposes." *Fisher*, 402 F.3d at 1173. Mr. Hairston's claims are based upon the Eighth Amendment, and perhaps the Fifth Amendment Due Process Clause. The Federal Circuit and this Court have consistently held, however, that these constitutional provisions are not money-mandating. *See, e.g., Le Blanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir. 1995) (affirming this Court's dismissal for lack of subject matter jurisdiction, in part because the Fifth Amendment Due Process Clause is not money-mandating); *Cosma–Nelms v. United States*, 72 Fed.Cl. 170, 172 (2006) (stating that the Eighth Amendment is not money-mandating). Mr. Hairston's claims do not fall within this Court's jurisdiction and must be dismissed.

Mr. Hairston argues that 28 U.S.C. § 1346(a) grants this Court jurisdiction to hear his case. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 1, May 2, 2011.) However, the types of actions in which the district courts possess jurisdiction "concurrent with the Court of Federal Claims" do not encompass any of Mr. Hairston's claims. *See* § 1346(a). Section 1346(a)(1) gives the district courts concurrent jurisdiction with this Court to hear tax refund suits, and § 1346(a)(2) (the "Little Tucker Act") applies to non-tort suits for money damages of less than $10,000. Section 1346(a) does not apply to suits based upon the FTCA, *Bivens*, or the Fifth or Eighth Amendments, and therefore, it does not support subject matter jurisdiction of Mr. Hairston's claims in this Court.

**B. *Transfer to a District Court Is Not in the Interest of Justice.***

■ When this Court lacks jurisdiction over a particular action, it has the authority to transfer that action to a court "in which the action ... could have been brought at the time it was filed or noticed" if such transfer is "in the interest of justice." 28 U.S.C. § 1631. The Court often determines whether transfer is in the interest of justice based upon an assessment of plaintiff's claims on their merits. *See Taylor v. United States*, 92 Fed.Cl. 36, 39 (2010); *see also Faulkner v. United States*, 43 Fed.Cl. 54, 56 (1999) (quoting *Siegal v. United States*, 38 Fed.Cl. 386, 390–91 (1997)) ("If such transfer 'would nevertheless be futile given the weakness of plaintiff's case on the merits,' the deciding court may decline to transfer the case and dismiss it."). When conducting such assessments, the Court must "hold [pro se complaints] to 'less stringent standards than formal pleadings drafted by lawyers' " and must assume the truth of the plaintiff's factual allegations. *Hampel v. United States*, 97 Fed.Cl. 235, 237 (2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see also Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987). On the other hand, the court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed.Cir.2007). After all, "justice is ill-served when a jurist crosses the line from finder of fact to advocate," and the court should avoid making plaintiff's case for him. *Demes v. United States*, 52 Fed.Cl. 365, 369 (2002).

■ Mr. Hairston's main claim, regarding inadequate medical attention in federal prison, is based upon the Eighth Amendment, which bans "cruel and unusual punishment." To succeed on a claim of inadequate medical care in prison, a plaintiff must show that the prison displayed "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 104, 97 S.Ct. 285. The first element of this showing, "deliberate indifference," describes the state of mind required of the prison officials involved and must rise to a level

beyond "inadvertent failure to provide adequate medical care" or mere negligence in treating or diagnosing a medical condition. *Id.* at 105–06, 97 S.Ct. 285. The second element, "serious medical needs," is typically satisfied when the plaintiff has a condition "that has been diagnosed by a physician as requiring treatment or ... that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987) (quoting *Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J.1979), *aff'd,* 649 F.2d 860 (3d Cir.1981)); *Mahan v. Plymouth Cnty. House of Corr.,* 64 F.3d 14, 18 (1st Cir.1995); *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997); *Sheldon v. Pezley,* 49 F.3d 1312, 1316 (8th Cir.1995); *Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir.1996).

Mr. Hairston's chronic back condition may meet the standard of "serious medical need." As shown in Mr. Hairston's Exhibit D attached to his Complaint, a neurosurgeon evaluated Mr. Hairston on January 18, 2011 as having a "lumbar epidural synovial cyst," "lumbar canal stenosis," and a "bulging disk," for which the neurosurgeon recommended "physical therapy—if no relief, surgery." (Compl. Ex. D, Mar. 4, 2011.)

 However, "deliberate indifference" to Mr. Hairston's medical needs is not apparent. Mr. Hairston's treatment may have been unreasonably delayed, given that his consultation with the neurosurgeon was ordered on June 14, 2010 but did not take place until January 18, 2011, and that his physical therapy was ordered on January 18, 2011 but was not requested until February 2, 2011 or started until March 10, 2011. (Compl. Ex. D, Mar. 4, 2011; Pl.'s Mot. to Supplement Am. Compl. Ex. B, D, Apr. 25, 2011.) However, whether or not the course of treatment was substandard, even to the point of malpractice, is not the issue. According to precedent, "the only permissible basis of liability is deliberate indifference on the part of the defendant." *Layne v. Vinzant,* 657 F.2d 468, 474 (1st Cir.1981). Nothing suggests that the delay in Mr. Hairston's medical care resulted from the wanton state of mind which the "deliberate indifference" standard is in-

tended to prevent. *See Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citing *Estelle,* 429 U.S. at 105–06, 97 S.Ct. 285). Furthermore, in the documents Mr. Hairston provided to the Court, the associate warden indicated that when Mr. Hairston did see the physical therapist, he "did not cooperate during this examination, nor [was he] interested in the exercises [the therapist] was demonstrating for [him]." (Mot. to Supplement Am. Compl. Ex. B, Apr. 25 2011.) Thus, while Mr. Hairston complains of inadequate medical care, a more accurate account of Mr. Hairston's situation may be that he did not cooperate and was not interested in the medical care he received. *See Layne,* 657 F.2d at 474.

 Mr. Hairston also claims that prison officials transferred him to a different facility each time his medical care complaint reached the final stage of administrative appeal in order to prevent his access to the courts, in violation of his constitutional rights. (Compl. ¶¶ 1–2, Mar. 4, 2011.) Prison administrators have broad discretion to transfer inmates for any reason or even for no reason. *Montanye v. Haymes,* 427 U.S. 236, 242–43, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). While this discretion may not eclipse an inmate's constitutional rights, the inmate bears the heavy burden of showing that he was actually transferred for the unconstitutional reason alleged. *Layne,* 657 F.2d at 475.

 Mr. Hairston's pleadings indicate three prison transfers: from Federal Correctional Institute (FCI) Schuylkill to FCI Fort Dix; from FCI Fort Dix to Lewisburg Federal Prison Camp (FPC); and from Lewisburg FPC to FCI Allenwood. (Compl. ¶¶ 1–2, Mar. 4, 2011.) Mr. Hairston acknowledges that at least one prison transfer, from Lewisburg FPC to FCI Allenwood, occurred for a legitimate reason. Mr. Hairston had been "attacked" at Lewisburg, and staying there may have been a threat to his safety. *Id.* at ¶ 2. However, without more than conclusory allegations that his other two prison transfers were motivated by a desire to prevent him from filing suit, this Court does not find transfer of Mr. Hairston's case to a district court to be "in the interest of justice." *See McZeal,* 501 F.3d at 1356.

Finally, Mr. Hairston is no stranger to the federal judicial system. In the past ten years, he has filed at least twenty cases in the federal district courts in Pennsylvania, New Jersey, and West Virginia, among others. This Court declines to expend any further resources on a plaintiff who uses the judicial system in this intemperate manner. If Mr. Hairston has any non-frivolous claims that he wishes to file in a court of competent jurisdiction, he certainly knows how to do so. In this case, dismissal, rather than transfer, is the appropriate course of action.

*Conclusion*

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED, and Mr. Hairston's request for transfer to a district court is DENIED. The Clerk is instructed to dismiss Plaintiffs complaint without prejudice.

IT IS SO ORDERED.